IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEMBA GUEYE** | : | CIVIL ACTION |
| 217 S. 57TH STREET | : | |
| PHILADELPHIA, PA 19139 | : | |
| | : | |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| **CITY OF PHILADELPHIA** | : | |
| 1515 ARCH STREET, 15TH FLOOR | : | No. 2:25-cv-02488 |
| PHILADELPHIA, PA 19102 | : | |
| and | : | |
| **POLICE OFFICER/ DEPUTY SHERIFF** | : | |
| **JOHN DOE 1 – 2** | : | |
| 1515 ARCH STREET, 15TH FLOOR | : | |
| PHILADELPHIA, PA 19102 | : | |
| and | : | |
| **CORRECTIONAL INTAKE OFFICER** | : | |
| **JOHN/JANE DOE** | : | |
| 7901 STATE ROAD | : | |
| PHILADELPHIA, PA 19136 | : | |

## CIVIL COMPLAINT

### I. INTRODUCTION

1. Plaintiff brings this action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and Pennsylvania common law against Defendants as a result of Defendants taking Plaintiff into custody and incarcerating him for several weeks despite Plaintiff possessing federal identification proving he was not the same "Demba Gueye" as the one with an active bench warrant.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims brought under § 1983 under 28 U.S.C. §§1331 and 1343.

1

3. This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 and the principles of pendant and ancillary jurisdiction.

4. Venue is proper under 28 U.S.C. §1391(b) because the causes of action upon which the complaint is based arose in the City of Philadelphia, Pennsylvania, which is in the Eastern District of Pennsylvania.

### III. PARTIES

5. Plaintiff, Demba Gueye, is an adult citizen and resident of the Commonwealth of Pennsylvania residing as captioned.

6. Defendant, City of Philadelphia, is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania, which maintains its principal offices as captioned.

7. At all relevant times, Defendant City of Philadelphia acted or failed to act through their employees, agents, officers, workmen, servants, and/or contractors, then and there acting within the course and scope of their employment, agency, office, work order, servanthood, and/or contract, and under color of state law, including the individual defendants.

8. Defendants, Police Office/Deputy Sheriff John Doe 1 – 2, were at all material times officers of the City of Philadelphia Police Department or deputies of the Philadelphia Sheriff's Office. They are being sued in their individual capacity, and they are designated by fictitious name because Plaintiff has been unable to determine their identities despite the exercise of reasonable diligence. They are further designated in the alternative as "Police Officer/Deputy Sheriff" due to Plaintiff's limited understanding of the English language.

9. Defendant, Correctional Intake Officer John/Jane Doe, was at all material times a correctional officer of the Philadelphia Department of Prisons. He/She is being sued in his/her individual capacity.

10. At all material times, Defendants Police Officer/Deputy Sheriff Doe 1 – 2 and Correctional Intake Officer John/Jane Doe acted within the course and scope of their employment, under the color of state law, and pursuant to the customs, policies, and practices of Defendant City of Philadelphia.

11. At all material times, Defendant City of Philadelphia was charged with the responsibility of testing, hiring, training, disciplining, and supervising members of the Philadelphia Police Department and Philadelphia Department of Prisons, including the individual defendants, and was the final policymaker for the Philadelphia Police Department and Philadelphia Department of Prisons.

## IV. OPERATIVE FACTS

12. On or about Thursday, May 18, 2023, at approximately 9:30 a.m., Plaintiff, Demba Gueye, went to the Juanita Kidd Stout Center for Criminal Justice (hereinafter, "Criminal Justice Center"), the location of the criminal divisions of the Philadelphia Municipal Court and the Philadelphia Court of Common Pleas, to obtain a criminal background check as part of finalizing his immigration application.

13. Plaintiff's date of birth is December 30, 1960.

14. Plaintiff speaks extremely limited English and is fluent in Fulani, a West African dialect.

15. Upon information and belief, the Criminal Justice Center has interpreters for several different languages on call but does not have any Fulani interpreters on call—they

3

must be requested in advance for a defendant or a witness.

16. Upon information and belief, "Demba Gueye" is a very common name in Plaintiff's country of origin, similar to "John Smith" in the United States.

17. At the Criminal Justice Center, a court employee ran Plaintiff's name and discovered an active bench warrant for another Demba Gueye with a date of birth of August 3, 1956.

18. The bench warrant was issued in a pending criminal matter against the other Demba Gueye with a different date of birth.

19. Upon information and belief, the other Demba Gueye was deported by the federal government well before May 18, 2023.

20. The court employee requested assistance from Defendants Police Officer/Deputy Sheriff John Doe 1 and John Doe 2.

21. Plaintiff presented to the officers/deputies his federally issued photo identification, issued to him as a result of his lawful permanent resident status, that clearly indicated his date of birth.

22. Defendants Police Officer/Deputy Sheriff John Doe 1 and John Doe 2, disregarded and ignored Plaintiff's identification as a valid federally issued identification, placed Plaintiff in handcuffs and arrested him.

23. Plaintiff was then brought before the Honorable Jacquelyn Frazier-Lyde of the Philadelphia Municipal Court for a bench warrant hearing without the aid of an interpreter.

24. The court set Plaintiff's bail at $999,999.00, and Plaintiff was taken to Curran-Fromhold Correctional Facility, a facility of the Philadelphia Department of Prisons.

25. Intake Officer John/Jane Doe processed and accepted Plaintiff into the prison despite Plaintiff's federally issued identification. He remained there for approximately two (2) weeks.

26. On May 30, 2023, Plaintiff's bail was modified to release on his own recognizance (ROR) by the Honorable Zachary C. Shaffer of the Philadelphia Court of Common Pleas.

27. This bail modification was based on evidence presented by Plaintiff's counsel, to wit, the mugshot of the other Demba Gueye taken at the time of initial arrest and Plaintiff's United States passport, which had several visa stamps from international trips he was able to successfully take while the bench warrant was active.

28. The court also ordered a fingerprint comparison be done to confirm whether or not Plaintiff was the Demba Gueye originally arrested and charged.

29. A fingerprint technician of the Philadelphia Police Department came to the courtroom with the original fingerprint cards from the initial arrest of the other Demba Gueye, took Plaintiff's fingerprints in the anteroom, and conducted his analysis in the courtroom.

30. Plaintiff was conclusively determined to not be the other Demba by the fingerprint technician in open court.

31. On October 4, 2023, Judge Shaffer of the Philadelphia Court of Common Pleas issued an order finding that Plaintiff was not the other Demba Gueye and ordering that he would no longer be hauled into court to answer allegations directed at another person.

32. The Philadelphia Department of Prisons follows a written policy, number 4.A.2, covering intake of new inmates, including confirming their identity.

33. Per the policy, "Identification will be based on the inmate's accompanying documentation."

34. It further commands, "The Intake Officer will check the inmate's date of birth (DOB), any previous addresses, social security number, aliases, **any available photo IDs**, booking number from the Police Administration Building, and any other available sources to positively identify the inmate." (emphasis added).

35. Had the policy been followed, Intake Officer John/Jane Doe would not have accepted Plaintiff into the facility and he would not have been incarcerated.

36. Despite the promulgation of the written policy, Defendant City of Philadelphia has for many years been deliberately indifferent to employees violating this policy, such as Defendant Correctional Intake Officer John/Jane Doe, by way of failing to adequately supervise, discipline, and/or train prison employees in confirming the true identity of an individual undergoing intake at a Philadelphia Department of Prisons facility.

37. It is obvious that said failure(s) would result in the wrongful detention of people with the same name as someone with an arrest warrant, such as happened to Plaintiff.

38. This practice and/or custom of failing to follow policy 4.A.2, and therefore failing to reasonably confirm the identity of individuals undergoing prison intake, is evidenced by past incidents, including but not limited to:

    a. Antonio Javier Morales had the same first and last name as his twin brother, for whom there was an active arrest warrant. At intake, prison employees failed to check his driver's license, which would have revealed a different driver's license number from his brother and prevented his incarceration for approximately two (2) weeks. *Morales v. City of Philadelphia*, 2:15-cv-01318.

    b. Martin Martinez was held in Philadelphia custody for eighteen (18) days on the basis of an arrest warrant from Texas despite being in possession of his driver's license, which showed he was not the person wanted by the warrant. *Martinez v. Police Officer Anthony Avery*, 2:11-cv-06581.

    c. Gary Long was held in Philadelphia custody for three (3) days pursuant to a warrant for another Gary Long of a different race. This error was corrected due to a correctional officer flagging that Mr. Long had two different Philadelphia Police Photo Numbers, not by comparing the identification of the White Gary Long being processed through intake to the Black Gary Long for whom the warrant was issued. *Long v. City of Philadelphia*, 2:15-cv-00202.

    d. Julie Hudson was held in Philadelphia custody for approximately one (1) week pursuant to a Texas warrant for a different Julie Hudson, who was not released due to prison officials confirming her identity, but due to Ms. Hudson's family reaching out to Texas authorities to provide evidence that Ms. Hudson was in Philadelphia and not Texas at the time of the alleged crime. *Philly Voice*, "Philly Woman Freed after Mistaken Identity Landed Her in Jail on Texas Warrant", *available at* https://www.phillyvoice.com/julie-hudson-philly-innocent-released-jail-mistaken-identity-webster-texas-police/.

39. As a direct and proximate result of the above, Plaintiff has suffered mental anguish, humiliation, and emotional distress and will continue to suffer same for an indefinite time in the future to his great detriment and loss.

40. As a further direct and proximate result of the above, Plaintiff has missed time from work and suffered a loss of income.

41. As a further direct and proximate result of the above, Plaintiff incurred legal fees for criminal representation and may incur other financial expenses and losses.

### COUNT I – 42 U.S.C. § 1983
### FOURTH AND FOURTEENTH AMENDMENTS—UNLAWFUL SEIZURE
### DEMBA GUEYE V. ALL INDIVIDUAL DEFENDANTS

42. All preceding paragraphs are fully incorporated herein by reference.

43. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe took Plaintiff into government custody in the course and scope of their employment as law enforcement and correctional officers.

44. Plaintiff was behaving cooperatively, peaceably, and reasonably under the circumstances and not in any way that would have given Defendants reasonable

7

        suspicion or probable cause to arrest, detain, or seize Plaintiff's person.

45. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe lacked a warrant, exigency, or other warrant exception that would justify the seizure of Plaintiff's person.

46. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe detained, arrested, and seized Plaintiff despite his federally issued photo identification that establishes that he is not the other Demba Gueye, for whom the warrant was issued.

47. The above-described acts and failures to act of Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, the laws of the United States and the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

48. The above-described actions of Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands compensatory and punitive damages against Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe, jointly and/or severally, in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.

## COUNT II – 42 U.S.C. § 1983
### SUBSTANTIVE DUE PROCESS—UNLAWFUL DETENTION
### DEMBA GUEYE V. CORRECTIONAL INTAKE OFFICER JOHN/JANE DOE

49. All preceding paragraphs are fully incorporated herein by reference.

50. Defendant Correctional Intake Officer John/Jane Doe processed Plaintiff and accepted him for incarceration by the Philadelphia Department of Prisons in the course and scope of their employment as a correctional officer.

51. At that time, Defendant Correctional Intake Officer John/Jane Doe unreasonably, arbitrarily, capriciously, and with deliberate indifference to Plaintiff's constitutional rights, accepted Plaintiff into a Philadelphia prison and caused him to be held in pretrial detention to answer charges directed to another person.

52. The above-described acts and failures to act of Defendant Correctional Intake Officer John/Jane Doe violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the laws of the United States and the Commonwealth of Pennsylvania, and were in violation of 42 U.S.C. §1983.

53. The above-described actions of Defendant Correctional Intake Officer John/Jane Doe were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands compensatory and punitive damages against Defendant Correctional Intake Officer John/Jane Doe in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.

## COUNT III – 42 U.S.C. § 1983
### *MONELL* CLAIM
### DEMBA GUEYE V. CITY OF PHILADELPHIA

54. All preceding paragraphs are fully incorporated herein by reference.

55. Defendant City of Philadelphia is the final policymaker for the City of Philadelphia Department of Prisons.

56. Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained inadequate training, practices, and customs for correctional officers, including Defendant Correctional Intake Officer John/Jane Doe, on confirming the identity of persons prior to being detained by the Philadelphia Department of Prisons.

57. Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained for years a recognized and accepted practice and custom of condoning and/or acquiescing to correctional officers, including the Defendant Correctional Intake Officer John/Jane Doe, failing to follow written policies related to confirming the identity of detainees or otherwise reasonably confirm the identity of detainees during intake and prior to their admission into prison.

58. Plaintiff believes and therefore avers that Defendant City of Philadelphia has systematically failed to discipline correctional officers, including Defendant Correctional Intake Officer John/Jane Doe, for failing to follow written policies related to confirming the identity of detainees or otherwise reasonably confirm the identity of detainees during intake and prior to their admission into prison.

59. The failure of Defendant City of Philadelphia to enforce policies, adopt practices and customs, and provide adequate training to their correctional officers

regarding following written policies related to confirming the identity of detainees or otherwise reasonably confirming the identity of detainees during intake and prior to their admission into prison, was deliberately indifferent to the constitutional rights of its citizens, and was a proximate cause of Plaintiff's wrongful pretrial detention.

60. The need for Defendant City of Philadelphia to train, supervise, and discipline its correctional officers, to enforce policies, adopt practices and customs, and provide adequate training to their correctional officers regarding following written policies related to confirming the identity of detainees or otherwise reasonably confirming the identity of detainees, is obvious as it will inevitably lead to the unlawful detention of persons with the same name as the subject of an arrest warrant, such as happened to Plaintiff.

61. Said training, custom, and/or practice, or lack thereof, violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, and/or violates the Due Process Clause of the Fourteenth Amendment, the Laws of the United States, and of the Commonwealth of Pennsylvania.

62. Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained for years a recognized and accepted practice and custom of condoning and/or acquiescing to correctional officers, including Defendant Correctional Intake Officer John/Jane Doe, failing to follow written policies related to confirming the identity of detainees or failing to otherwise reasonably

confirm the identity of detainees during intake and prior to their admission into prison.

63. Plaintiff believes and therefore avers that Defendant City of Philadelphia has been deliberately indifferent to the rights of residents and citizens of the City of Philadelphia, Pennsylvania, to be free from correctional officers failing to follow written policies related to confirming the identity of detainees or failing to otherwise reasonably confirm the identity of detainees during intake and prior to their admission into prison, and said indifference violated Plaintiff's rights under the Fourth and Fourteenth Amendments, and/or the Due Process Clause of the Fourteenth Amendment, of the United States Constitution.

64. Plaintiff believes and therefore avers that Defendant City of Philadelphia was aware of the aforementioned practices and customs for a substantial period of time, and despite that knowledge, failed to take steps to terminate said practices, failed to properly supervise or discipline officers, including Defendant Correctional Intake Officer John/Jane Doe, failed to effectively train correctional officers with regard to the legal limits on their authority, and instead sanctioned, acquiesced, and/or were deliberately indifferent to the practices and customs that violated the constitutional rights of individuals such as Plaintiff.

65. Plaintiff believes and therefore avers that Defendant City of Philadelphia knew or should have known of the aforementioned practices and customs, as well as the inadequate training, supervision, and discipline of correctional officers, including Defendant Correctional Intake Officer John/Jane Doe, and

deliberately, intentionally, and knowingly failed to take steps to terminate or limit said policies, practices, and customs, including but not limited to:

a. Failure to provide adequate training, supervision, and discipline to officers regarding written policies related to confirming the identity of detainees or otherwise reasonably confirming the identity of detainees during intake and prior to their admission into prison;

b. Failure to enforce the clear, concise, and appropriate guidance of written policies related to confirming the identity of detainees during intake and prior to their admission into prison;

c. Failure to conduct systematic and complete internal investigations and commanding officers' investigations resulting in appropriate and documented corrective actions at all levels of the Philadelphia Department of Prisons;

d. Failure to prevent Plaintiff from being injured and his constitutional rights violated by Defendant Correctional Intake Officer John/Jane Doe where Defendant knew or should have known of the systemic problems with failing to reasonably confirm the identities of detainees;

e. Failure to properly test, train, and/or select its officers with regards to proper confirmation of the identity of detainees during intake and prior to their admission into prison;

f. Otherwise acting without due regard for the rights, safety, and position of Plaintiff in accordance with his constitutional rights.

66. The deliberate indifference of the aforementioned training, practices, and/or customs, or lack thereof, was a proximate cause of Plaintiff's injuries and losses and the violation of his constitutional rights.

67. By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the practices and customs Defendant City of Philadelphia condoned, acquiesced in, participated in, in violation of the plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, the Laws of the United States and of the Commonwealth of Pennsylvania and in violation of 42 U.S.C. § 1983.

68. The plaintiff believes and therefore avers, that the Defendant, City of Philadelphia has adopted and maintained for many years an inadequate system to supervise and review correctional officers' confirmation of the identities of detainees during intake and prior to their admission into prison, which system has failed to identify instances of the use of said behavior to discipline, more closely supervise or retrain officers who, in fact, failed to follow written policies related to confirming the identity of detainees or failing to otherwise reasonably confirm the identity of detainees.

69. The aforementioned practice, custom, and/or lack of training related to failing to follow written policies related to confirming the identity of detainees or failing to otherwise reasonably confirm the identity of detainees during intake and prior to their admission into prison is shown by past incidents involving The City of Philadelphia, described above, and shows a practice or custom and a need for training.

70. The foregoing acts, omissions, and systematic deficiencies are practices and customs of Defendant City of Philadelphia and as such caused Defendant Correctional Intake Officer John/Jane Doe to be unaware of the rules and laws governing confirming the identity of a detainee, all with the procedural result that officers are more likely to illegally seize and/or detain individuals in situations where such conduct is neither necessary, reasonable, nor legal.

**WHEREFORE**, pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff demands compensatory damages against Defendant City of Philadelphia in an amount sufficient to fully and adequately compensate Plaintiff, plus interest, costs, attorney's fees, and all other appropriate relief.

## COUNT IV – PENNSYLVANIA COMMON LAW
## FALSE ARREST/FALSE IMPRISONMENT
## DEMBA GUEYE V. ALL INDIVIDUAL DEFENDANTS

71. All preceding paragraphs are fully incorporated herein by reference.

72. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe took Plaintiff into government custody in the course and scope of their employment as law enforcement and correctional officers.

73. Plaintiff was behaving cooperatively, peaceably, and reasonably under the circumstances and not in any way that would have given Defendants reasonable suspicion or probable cause to arrest, detain, or seize Plaintiff's person.

74. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe lacked a warrant, exigency, or other warrant exception that would justify the seizure of Plaintiff's person.

75. Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe detained, arrested, and seized Plaintiff despite his federally issued photo identification that establishes that he is not the other Demba Gueye, for whom the warrant was issued.

76. The above-described actions and failures to act of Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to Pennsylvania common law, Plaintiff demands compensatory and punitive damages against Defendants Police Officer/Deputy Sheriff John Doe 1 – 2 and Correctional Intake Officer John/Jane Doe, jointly and/or severally, in an amount sufficient to

fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT IV – PENNSYLVANIA COMMON LAW**
**WILFUL MISCONDUCT**
**DEMBA GUEYE V. CORRECTIONAL INTAKE OFFICER JOHN/JANE DOE**

77. All preceding paragraphs are fully incorporated herein by reference.

78. Defendant Correctional Intake Officer John/Jane Doe had a duty to confirm Plaintiff's identity under 37 Pa. Code § 95.222(1)(v).

79. Under that subsection of the Pennsylvania Code, Defendant Correctional Intake Officer John/Jane Doe was required to obtain basic personal information "for identification and classification purposes", including but not limited to name and date of birth.

80. Plaintiff's name and date of birth were reflected on his federally issued photo identification, which was available to Defendant Correctional Intake Officer John/Jane Doe.

81. Defendant Correctional Intake Officer John/Jane Doe violated this duty of care established by regulation by failing to review Plaintiff's date of birth.

82. Defendant Correctional Intake Officer John/Jane Doe knew or should have known about this duty of care due to the written policy of the Philadelphia Department of Prisons, described above.

83. Said failure was a direct and proximate cause of Plaintiff's wrongful detention.

84. Said failure constituted actual malice and/or willful misconduct.

85. The above-described actions and failures to act of Defendant Correctional Intake

Officer John/Jane Doe were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to Pennsylvania common law, Plaintiff demands compensatory and punitive damages against Defendant Correctional Intake Officer John/Jane Doe in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendant, and deter Defendant and others similarly situated to Defendant, plus interest, costs, attorney's fees, and all other appropriate relief.

/s/ *Jason E. Parris*

Jason E. Parris, Esq.
PA ID No. 312363
jparris@adlawfirm.com

Abramson & Denenberg, P.C.
1315 Walnut Street, Suite 500
Philadelphia, PA 19107
(215) 546-1345
*Counsel for Plaintiff*